19374

NATIONAL SERVICE FIRE INSURANCE COMPANY, Respondent, v. Bernice JORDAN, Administratrix of the Estate of Willie Oscar Jordan, et al., Appellant.

(187 S. E. (2d) 230)

*Messrs. Singleton and Singleton,* of Conway, and *Cooper, Gary, Nexsen and Pruet,* of Columbia, *for Appellant,*

*Messrs. Burroughs & Green,* and *Rankin & Johnson,* of Conway, *for Respondents,*

February 28, 1972.

Bussey, Justice:

This is an action for a declaratory judgment arising out of the following state of facts. Junior Chestley Larrimore, because of driving while under the influence of intoxicants, had his drivers license suspended for the period July 5, 1962 through January 5, 1963. The record of this violation somehow became entered on the records of the Highway Department under the name of Chestley Larrimore, Junior, rather than the correct name. In order for him to secure the return of his drivers license following the period of suspension it was, of course, necessary for him to file proof of financial responsibility and, in pursuit thereof, Larrimore's wife, Lois Magdalene Larrimore, obtained from Canal Insurance Company a liability policy covering a 1950 Ford pickup truck for the policy period of December 4, 1962 through December 4, 1963, under which her husband, Junior Chestley Larrimore was an additional insured. In connection with this policy, Canal filed with the Department on December 2, 1962, an SR-22 form certifying, *inter alia,* that there was in effect a motor vehicle liability policy, as defined in the South Carolina Motor Vehicle Safety Responsibility Act, issued by it to the said Junior Chestley Larrimore.

At the time of the filing of such form, the Department also had on file a six point violation against Larrimore under his correct name and did not immediately correlate such name with that of Chestley Larrimore, Junior, under which name the license suspension had been entered. Not being immediately aware of anything against the record of Junior Chestley Larrimore, except the six point violation, the Department, on December 11th, sent him a mimeographed form letter advising him that an SR-22 filing was no longer required for "a single six point violation". A copy of such form letter was sent to Canal, who, apparently without further inquiry, refunded to Mrs. Larrimore a portion of her premium.

In January 1963, Larrimore inquired of the Department about his license and informed it that an SR-22 insurance

form, in accordance with what he had been told to do, had been filed. It was at this point that the Highway Department realized that Chestley Larrimore, Junior, and Junior Chestley Larrimore were one and the same person, and having on file the form SR-22 from Canal, it restored his license to him on January 16, 1963. Of this correspondence Canal had no notice. On or about April 30, 1963, Mrs. Larrimore disposed of the Ford pickup truck insured with Canal and, at her request, Canal canceled its policy and refunded the unearned premium, but Canal did not file an SR-26, notice of cancellation, with the Department until long after the accident which gave rise to this litigation. Subsequent thereto, the Larrimores had other vehicles and filed other certified policies with the Department, all of which were properly canceled and none of which was in force and effect at the time of the accident.

On or about December 22, 1964, Larrimore was driving a car owned by one Cooper in which Willie Oscar Jordan was a passenger, and became involved in a collision in which both Jordan and Larrimore were killed. The plaintiff in this action, National Service Fire Insurance Company, provided uninsured motorist coverage to the said Jordan, and his administratrix made claim against National, asserting that the Cooper vehicle driven by Larrimore was an uninsured one. National contends that Canal's certified policy issued December 1962, for the benefit of Larrimore, was still in force and effect at the time of the accident, never having been properly canceled by Canal in compliance with the statutory law. Canal appeals from an order of the lower Court holding that its policy was still in force and effect, as contended by National.

Appellant states and argues four questions but the questions, we think, are really only two, the first of which is, was there any valid cancellation or termination of Canal's coverage of Junior Chestley Larrimore prior to the accident? The appellant having made no effort to comply with the statutory provisions of 1962 Code Sec. 46-750.26 (now

Sec. 46-702(7) (h) in the Supplement to the Code) this question is answered by the decision of this Court in *United States Fidelity & Guar. Co. v. Security F. & I. Co.,* 248 S. C. 307, 149 S. E. (2d) 647. We quote therefrom as follows,

· "Statutory provisions requiring notice for cancellation or termination of compulsory motor vehicle insurance are mandatory, must be strictly followed to effect a cancellation or termination of the policy, and must be construed so as to effect the statutory purpose of providing protection to the general public."

The statute places the burden upon the insurer to give notice that a policy previously certified will be canceled or terminated and, in the absence of compliance therewith, continuous coverage is afforded the insured. The burden having been placed upon Canal by the statute, it was not entitled to rely on a copy of a mimeographed form letter sent out by the Department under a misapprehension and containing incomplete information.

The other contention of Canal is that the Motor Vehicle Safety Responsibility Act does not require a certified policy to provide coverage with respect to a motor vehicle not described therein. It is argued that any coverage furnished Larrimore with respect to an automobile not described in the policy was voluntary, as opposed to required coverage and, therefore, it should not be held to afford coverage with respect to Larrimore's operation of the Cooper vehicle, even though there was no proper cancellation or termination of the certified policy. This contention is, we think, squarely answered by the language of the pertinent statutory provisions. Sec. 46-744 of the 1962 Code required Larrimore to "give and thereafter maintain proof of financial responsibility" as a prerequisite to the restoration of his privilege of operating a motor vehicle. In 1962 Code Sec. 46-702(13), in effect at the inception of the policy here involved, "proof of financial responsibility" was defined as follows,

"Proof of ability to respond in damages for liability on account of accidents occurring after the effective date of such proof, arising out of the ownership, maintenance or use of *a motor vehicle* * * *." (Emphasis added.)

The quoted Code Section was, in 1963, amended but in a particular not here pertinent.

The first sentence of Code Sec. 46-748 reads as follows, "Proof of financial responsibility may be furnished by filing with the Department the written certificate of any insurance carrier duly authorized to do business in this State certifying that there is in effect a motor vehicle liability policy *for the benefit of the person required to furnish proof of financial responsibility.*" (Emphasis added.)

The person whose license has been suspended and is about to be restored, not any particular automobile, is regarded as the potential hazard to the general public. He is required to give and thereafter maintain proof of financial responsibility and a policy which afforded coverage with respect to only one vehicle, and that a vehicle owned by someone else, would not afford "proof of financial responsibility" as that term is defined in the statute.

The exceptions of the appellant are, we think, without merit and the judgment of the lower court is accordingly

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.