McMlLLlAN, Judge,
dissenting.
I respectfully dissent to the majority’s opinion in this case because I believe it ignores long-standing principles of Georgia law and the language of the insurance policy at issue to improperly shift the burden to Travelers to prove Castellanos’s claim.
The primary issue raised on appeal is the legal question of whether the insured seeking UM coverage or the UM carrier bears the burden of proving that UM coverage applies in order to survive summary judgment. It is well settled, however, that Castellanos, as the insured, had “the ... burden to prove (1) the existence of a policy of liability insurance containing uninsured motorist protection, and (2) that [Santiago] was an uninsured motorist at the time of the [wreck]. The court could not presume that [Santiago] was an uninsured motorist.” (Citations and punctuation omitted.) Williams v. Safeway Ins. Co., 223 Ga. App. 93, 94 (476 SE2d 850) (1996).[18] See siso Anthony v. Larios, 256 Ga. App. 248, 249 (568 SE2d 135) (2002); Hartford Accident & Indem. Co. v. Studebaker, 139 Ga. App. 386, 388 *681 (1) (228 SE2d 322) (1976). See also Frank E. Jenkins et al., Georgia Automobile Insurance Law § 37:22 (2013-2014 ed.).
This requirement is simply a reiteration of the principle that an insured claiming an insurance benefit “has the burden of proving that a claim falls within the coverage of the policy.” Ga. Farm Bureau Mut. Ins. Co. v. Hall County, 262 Ga. App. 810, 812 (1) (586 SE2d 715) (2003). Thus, “[t]o establish a prima facie case on a claim under a policy of insurance the insured must show the occurrence was within the risk insured against.” Allstate Ins. Co. v. Grayes, 216 Ga. App. 419, 420 (1) (454 SE2d 616) (1995). See BayRock Mtg. Corp. v. Chicago Title Ins. Co., 286 Ga. App. 18, 19 (648 SE2d 433) (2007) (first element of a claim for an insurer’s bad faith is proof that the claim is covered under the policy); OCGA § 33-4-6. Here, no dispute exists that the Travelers’ policy (the “Policy”) provided UM coverage, but Travelers disputes that Castellanos carried his burden of establishing that Santiago was an uninsured motorist under its terms.
The applicable policy provisions state that Travelers agreed to “pay compensatory damages which an ‘insured’ is legally entitled to recover from the owner or operator of an ‘uninsured motor vehicle’ ” because of an insured’s bodily injury or property damage caused by an accident. The Policy defines an “uninsured motor vehicle” in pertinent part as “a land motor vehicle or trailer of any type ... [t]o which a liability bond or policy applies at the time of the accident but the bonding or insurance company . . . [IJegally denies coverage.”[19] (Emphasis supplied.) Thus, in order to present a prima facie case that Santiago’s vehicle was an uninsured motor vehicle under the policy, Castellanos bears the burden of demonstrating not only that United denied coverage, but that it legally denied coverage. And this Court has held that “coverage [cannot] be said to have been legally denied unless the denial is, under applicable law, legally sustainable.” (Emphasis omitted.) Hemphill v. Home Ins. Co., 121 Ga. App. 323, 335 (5) (174 SE2d 251) (1970). Compare Moore v. State Farm Mut. Auto. Ins. Co., 196 Ga. App. 755, 757 (397 SE2d 127) (1990) (proof of legal denial of coverage not required where policy did not require a legal denial of coverage, but instead required only “ ‘that the insuring company den(y) coverage,’ ” to qualify for UM coverage).
The record reflects that United cited Santiago’s lack of cooperation as the basis for its denial of coverage,[20] and it is well *682 settled that
[a] co-operation clause is a material condition of a liability policy and a breach of it in any material respect relieves the insurer of liability. The voluntary and unexcused failure of an insured to attend a trial, after notice or request to do so, upon a claim covered by his policy of insurance is such a breach of the clause.
H. Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co., 120 Ga. App. 800, 803 (1) (172 SE2d 355) (1969). But to demonstrate a legal denial of coverage on the basis of a lack of cooperation in a case between a claimant and the tortfeasor’s insurer, the insurer must make a prima facie showing “(a) that it reasonably requested its insured’s cooperation in defending against the plaintiff’s claim, (b) that its insured wilfully and intentionally failed to cooperate, and (c) that the insured’s failure to cooperate prejudiced the insurer’s defense of the claim.” (Citations omitted.) Vaughan v. ACCC Ins. Co., 314 Ga. App. 741, 742-743 (2) (725 SE2d 855) (2012). See also Liberty Mut. Ins. Co. v. Coburn, 129 Ga. App. 520, 525 (3) (200 SE2d 146) (1973) (physical precedent only); Cotton States Mut. Ins. Co. v. Proudfoot, 123 Ga. App. 397, 397 (3) (181 SE2d 305) (1971); H. Y. Akers, 120 Ga. App. at 804-805 (3); OCGA § 33-7-15 (b). An insurer does not meet this burden merely by demonstrating that the insured failed to appear at trial. Coburn, 129 Ga. App. at 525 (3); Proudfoot, 123 Ga. App. at 397 (3). Because Castellanos chose not to add United as a party defendant or to obtain a prior determination that a legal denial of coverage occurred, as between Castellanos and Travelers, he necessarily bears the burden of proving that United legally denied coverage to Santiago as part of his prima facie claim for UM coverage. See Anthony, 256 Ga. App. at 249; Williams, 223 Ga. App. at 94; Hartford, 139 Ga. App. at 388.
Travelers sought summary judgment on the ground that Castellanos failed to present evidence to support any of the three elements required to prove the lack of cooperation required for establishing a legal denial of coverage. It is well settled that
a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party’s case, but may point out by reference to the evidence in the record *683 that there is an absence of evidence to support any essential element of the nonmoving party’s case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.
(Citations and punctuation omitted.) Cowart v. Widener, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).
Castellanos initially argued below that he carried his burden of proof merely by showing that Santiago failed to attend the trial, which he asserted showed per se prejudice to United. But following the hearing on the motion for summary judgment, Castellanos’s attorney submitted a post-hearing brief and his own affidavit making additional assertions, apparently in support of the first two required elements for a lack of cooperation.[21] Castellanos’s counsel asserted that (1) Travelers’s counsel never disputed United’s counsel’s claim that Santiago’s January 22, 2010 response to interrogatories was incomplete and not verified due to Santiago’s lack of cooperation, thus giving Travelers notice that Santiago was not cooperating two years before trial; (2) Santiago’s counsel stated that he did not supplement the interrogatory responses because he was unable to locate an address or telephone number for Santiago after he was served with the original complaint; (3) a November 7, 2010 affidavit from the son of another defendant was filed in the underlying action stating that Santiago did not reside at the address noted on the sheriff’s return of service for him; and (4) the same address was listed on the insured vehicle’s registration and the driver’s license Santiago showed to police.
But neither these assertions nor any other evidence of record provide proof of any efforts made by United to locate Santiago, to obtain his cooperation, or to secure his attendance at trial. Accordingly, Castellanos failed to carry his burden of establishing that an issue of fact exists as to whether United “exercised good faith and diligence in an effort to procure the attendance of the insured at the trial,” H. Y. Akers, 120 Ga. App. at 804 (3), or to otherwise secure his cooperation. See Liberty Mut., 129 Ga. App. at 525 (3) (where insured has no knowledge of suit and insurer with full knowledge of suit fails *684 to make any effort to contact insured, insurer cannot defend claims based on lack of cooperation).
The record also contains no evidence demonstrating, or raising an inference of, an intentional or wilful refusal by Santiago to comply with any request by United for cooperation.[22] Without such evidence, the trial court could not presume Santiago’s actions in that regard reflect a wilful and intentional failure to cooperate. See Cowart, 287 Ga. at 633 (3) (c) (motion for summary judgment cannot be denied “based on speculation or conjecture”); Proudfoot, 123 Ga. App. at 397 (3) (where no evidence was presented as to why insured did not appear at trial, even in light of evidence of conversations in which insured told her insurer that she planned to be at trial, insured failed to show a wilful or intentional refusal to cooperate); Liberty Mut., 129 Ga. App. at 525 (3).
Because Castellanos failed to present evidence creating a material issue of fact as to the first two requirements for showing a legal denial of coverage by United,[23] his claim to recover UM benefits against Travelers fails, and I would not address the final requirement of showing prejudice. See Young v. Oak Leaf Builders, Inc., 277 Ga. App. 274, 278 (3) (626 SE2d 240) (2006) (when evidence as to any one essential element of claim is lacking, the claim fails and summary judgment is proper). Accordingly, in contrast to the majority, I would find that the trial court properly granted Travelers’ motion for summary judgment as to Castellanos’s claims.
The majority’s analysis erroneously shifts the burden of proving Castellanos’s prima facie case to Travelers. The majority asserts that Castellanos made out a prima facie claim merely by showing that Travelers provided him UM coverage, that he is legally entitled to recover from Santiago for the injuries he sustained in the accident, that United denied coverage on the basis of Santiago’s lack of cooperation, and that proof of Santiago’s failure to attend the trial is alone sufficient to show a lack of cooperation. But as discussed above, proof that an insured failed to attend trial is insufficient to establish the lack of cooperation necessary to establish a legal denial of *685 coverage. Rather, it requires proof, at the very least, that the insurer made good faith efforts to secure the insured’s attendance and/or cooperation. Such evidence is completely lacking in this case. Although the majority argues that this is not a case in which this Court is asked to presume that Santiago is an uninsured motorist, the majority’s analysis would actually require that the Court make a series of presumptions based solely on Santiago’s failure to attend the trial — that United made good faith efforts to secure Santiago’s cooperation and/or attendance at trial, that his nonattendance and lack of cooperation was wilful or intentional, and thus that United legally denied him coverage — in order to find that Santiago was an insured motorist under the terms of the Policy.
Significantly, the majority fails to cite any authority to support its argument that the evidence of record is sufficient to make out a prima facie case for a legal denial of coverage. The case of Southern General Ins. Co. v. Thomas, 197 Ga. App. 196, 197 (397 SE2d 624) (1990), upon which the majority relies is readily distinguishable. In that case, before suing his own UM insurer, the insured first obtained a judgment against the tortfeasor and then pursued an “unsuccessful” garnishment action against the tortfeasor’s insurer, which had denied coverage based on the tortfeasor’s lack of cooperation. Id. at 196. It is entirely possible, if not presumable, that the garnishment action was unsuccessful because the tortfeasor’s insurer established that it legally denied coverage. But in any event, the UM carrier did not dispute that a legal denial of coverage had occurred. Instead, it argued that even given a legal denial of coverage, the insured was not entitled to UM coverage on other grounds. Id. at 198. Accordingly, Thomas does not support the majority’s analysis.
The majority also fails to cite any authority to support shifting the burden to an UM insurer to make out its insured’s prima facie case for coverage, because no such authority exists. Indeed, to make the radical shift in the law the majority is suggesting would require the overruling of longstanding Georgia case law and would necessitate appellate review by all 12 judges of this Court. OCGA § 15-3-1 (d). Contrary to the majority’s analysis, an insurer, like Travelers, who merely points to an insured’s lack of evidence to support his claim for coverage is not asserting an affirmative defense. Rather, it is simply arguing for summary judgment under the applicable standard for a party who will not bear the burden of proof at trial by pointing to its opponent’s failure to make out his prima facie case. Although the majority contends that Travelers’ argument on summary judgment equates with an affirmative defense because once this Court shifts the burden of proof to the insurer to make out its insured’s prima facie case, the insurance company will have to set up *686 additional facts in justification of the other insurer’s denial of coverage. In doing so, the majority justifies shifting the burden to Travelers by arguing that it is asserting an affirmative defense, but it only becomes an affirmative defense because the majority has shifted the burden to the insurer. This circuitous reasoning is not supported by Georgia law.
Decided July 15, 2014 —
Reconsideration denied July 31, 2014 —
Larry E. Stewart, for appellant.
Magill Atkinson Dermer, David M. Atkinson, Marian L. Miller, for appellee.
For these reasons, I would affirm the trial court’s order granting summary judgment to Travelers.
I am authorized to state that Presiding Judge Andrews and Judge Ray join in this dissent.

 Although an insured must also prove the uninsured motorist’s liability for the insured’s damages, Santiago’s liability in this case was determined in the underlying suit filed by Castellanos. See Morton v. Horace Mann Ins. Co., 282 Ga. App. 734, 738 (2) (b) (639 SE2d 352) (2006) (it is well settled that injured party must first establish that driver of uninsured vehicle was legally liable); OCGA § 33-7-11.

 The Policy’s language mirrors the statutory definition of “uninsured motor vehicle” under OCGA § 33-7-11 (b) (1) (D) (iii).

 In response to Castellanos’s demand for payment, United’s counsel originally told him that United was prepared to pay the compensatory damages portion of the judgment in exchange for a satisfaction of judgment but would not pay the remainder of the award, asserting *682 that Arias’s policy did not cover punitive damages. Castellanos’s counsel countered that Castellanos would provide only a partial satisfaction of judgment in response to the insurer’s payment of only part of the judgment. In response to this counteroffer, United wrote Castellanos to inform him that it was denying coverage based on Santiago’s lack of cooperation.

 In the affidavit, the attorney averred that “[t]he facts alleged by me in Plaintiff’s Reply Brief to Defendant’s Post-Hearing Brief as to the attached pleadings as Exhibits and my conversations with United’s ... [attorney] in the underlying case are true and based upon my personal knowledge.” Although the affidavit was a clear attempt to affirm hearsay as fact, Travelers raised no objection below, and thus the averments containing hearsay must be considered as evidence. See OCGA § 24-8-802.

 To the contrary, Castellanos’s counsel represented that United’s counsel told the jury in the prior litigation that Santiago had no idea that the trial was taking place. This led to a sustained objection on the ground that United was addressing facts not in evidence in its argument. As the objection indicates, Castellanos’s counsel was well aware that such representations are not evidence.

 I note that this burden is not unduly onerous. Castellanos could have named both United and Travelers as party defendants and sought a declaration as to which insurer had liability for his claims, thus placing the burden on United to prove a legal denial of coverage. At the very least, he could have deposed United’s counsel to determine what efforts he made to secure Santiago’s cooperation. But Castellanos took no such action.